SAFEWAY STORES, INCORPORATED, a corporation, Appellant,

v.

Maggie L. BUGGS and Charles W. Buggs, Appellees.

No. 18854.

United States Court of Appeals District of Columbia Circuit.

Argued March 4, 1965.

Decided April 15, 1965.

---

Mr. Paul R. Connolly, Washington, D. C., for appellant.

Mr. Belford V. Lawson, Jr., Washington, D. C., for appellees. Mr. Donald J. Chaikin, Washington, D. C., also entered an appearance for appellees.

Before FAHY, DANAHER and McGOWAN, Circuit Judges.

FAHY, Circuit Judge:

In the District Court appellees, husband and wife, obtained a judgment against appellant Safeway Stores, Inc., on a jury verdict for damages attributed to a physical injury to the wife and loss of consortium by the husband. The judgment is for $11,000.00, of which about $2,800 was claimed as out of pocket expenses. The wife was alleged to have been injured when, as a patron in appellant's store, her ankle struck a display platform alleged to have been permitted negligently to remain in the aisle where she was walking in selecting merchandise.

Safeway does not now contest the judgment insofar as it fixes liability for the injury which occurred at its store. It questions the damages found by the jury for consequential injuries. The store injury occurred June 11, 1958 and involved primarily the wife's right ankle. The following September she twisted the same ankle, and on February 1, 1959, she testified the foot gave way as she was walking in her home, as a result of which she suffered an injury to her back. On each occasion she was attended by an orthopedic specialist, and later the back injury required further medical attention including hospitalization and an operation.

The court submitted to the jury the question whether the injuries subsequent to the accident of June 1958 were causally related to the latter should that injury be found to have been due to the negligence of appellant,[1] as the jury found it was. It is appellant's position that the evidence of the injury in September 1958, and, particularly, the injury of February 1959, were not shown to have been proximately caused by that of June 11, 1958, or that the injury of February was caused by that of September. Moreover, appellant contends that whatever the extent of appellee wife's own testimony linking her September and February injuries with each other, or with the store accident, expert medical testimony was required in order to warrant submission to the jury of the issue of proximate causation.

The orthopedic specialist who treated the wife after the June 1958 injury released her on July 16, advising her to

---

1. The Court, after defining proximate cause, instructed the jury:
"[Y]ou should not award the female plaintiff damages for any injuries which you find she has suffered after June 11, 1958, unless it has been shown by a propenderance of the evidence that those later injuries were proximately caused or proximately resulted from the accident on June 11, 1958."

wear an ankle support; and she testified that the fall on September 1 was caused by her foot giving way due to weakness of the ankle injured in appellant's store. She was treated by the same doctor after her September fall and he testified, "At that time she was wearing an ankle support." He released her on September 25 as much improved "except for weakness of the ankles."

We think the trial judge correctly held that the above testimony gave rise to a jury issue as to whether the September injury was proximately caused by that of June 11.

There remains to be decided whether there was sufficient evidence to submit to the jury the question whether the February fall was caused by residual weakness in the ankle traceable to the September or the June accidents. The orthopedic specialist testified that the wife told him her right ankle gave way causing the fall. Her own testimony was, "My foot gave way and I twisted my ankle." But there is no evidence that it gave way because of weakness attributable to the September or June episodes. Neither the appellee wife nor her doctor testified that this was so.[2] She did testify that the morning after the February fall, "I called Dr. Robinson who was still treating me for my ankle." But she had not been seen by Dr. Robinson since he discharged her on September 25. And the fact, as she said, that her foot gave way and she twisted her ankle February 1 is not evidence that this was due to the earlier incidents. The cause of the later fall is left unknown by the evidence, which was inadequate to allow the jury to attribute it to either the June or the September fall.[3]

The judgment insofar as it awards recovery to plaintiffs will be affirmed, but will be reversed insofar as it determines the amounts of recovery. The case will be remanded to the District Court for retrial limited as to the amount or amounts of recovery in a manner not inconsistent with this opinion. See Washington Gas Light Company v. Connolly, 94 U.S.App. D.C. 156, 159, 214 F.2d 254, 256 (1954).

It is so ordered.

---

**2.** After describing her falls, some of which occurred several years after the February 1959 fall, appellee wife was asked what caused her to twist her ankle. She replied, "Because my foot is very weak * * * as a result of the accident I had in 1958." This was obviously a catchall answer and not directed to the specific fall we deem important, that of February 1959.

**3.** See Wilhelm v. State Traffic Safety Comm., 230 Md. 91, 185 A.2d 715, 721 (1962); cf. S. S. Kresge Co. v. Kenney, 66 App.D.C. 274, 86 F.2d 651 (1936).